# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>- One Apple iPhone;<br>- One Apple iPhone in black case<br><br>all currently in the custody of U.S. Border Patrol located at 4525 US Highway 11, Malone, New York 12953 | )<br>)<br>)   Case No.   8:25-SW-50 (GLF)<br>)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See accompanying affidavit, incorporated herein

☒ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*D. Matthews*   3/3/2025 - 3:30 PM
*Applicant's signature*

Border Patrol Agent Dustin M. Matthews
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date:  MARCH 4, 2025

*[Signature]*
*Judge's signature*

City and state:  Plattsburgh, New York

Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF:

- One Apple iPhone;
- One Apple iPhone in black case

all currently in the custody of U.S. Border Patrol located at 4525 US Highway 11, Malone, New York 12953.

Case No. 8:25-SW-50 (GLF)

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Dustin M. Matthews, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of:

- One Apple iPhone;
- One Apple iPhone in black case.

(hereinafter "the Devices) which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), assigned to the Burke Border Patrol Station. I have been a Border Patrol Agent since December 2009. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a

Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3. I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4. The applied-for warrant would authorize the forensic examination of the Devices, as described in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 8 U.S.C. § 1324 (Bringing in and harboring certain aliens and conspiracy to do the same) and 8 U.S.C. § 1325 (Improper entry by alien), (the "Subject Offenses"), have been committed by Fatos DERVISHAJ and Ilirjana DERVISHAJ and others yet identified. There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

6. The property to be searched is:

- One Apple iPhone;
- One Apple iPhone in black case;

all currently in the custody of U.S. Border Patrol located at 4525 US Highway 11, Malone, New York 12953 and which were seized on February 20, 2025.

7. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. On February 20, 2025, Border Patrol Agents (BPA) from the Burke Border Patrol Station were assigned line watch operations in Churubusco, New York driving marked Border Patrol vehicles. At approximately 12:40 A.M. Swanton Sector Radio Dispatch notified Border Patrol Agents via service radio of a border surveillance camera activation with visual of two individuals walking southbound from the United States/Canada international border directly north of Frontier Road.

9. While responding to the border surveillance camera activation, an agent who was monitoring cameras in the area advised BPAs of a second activation showing a vehicle was traveling back and forth on Frontier Road. As agents approached the intersection of US-11 and Lost Nation Road, agents observed a silver Chevrolet sport utility vehicle (SUV), driving south off Lost Nations Road onto US-11. Agents observed that the silver SUV was bearing New Jersey license plates and stopped in the middle of US-11 as it failed to stop at the stop sign at the intersection.

10. The silver SUV began to travel eastbound on US-11. Agents noticed that the vehicle was bearing New Jersey license plate M55 SLL. As agents caught up to the vehicle, agents noticed the vehicle speed up and to go above the posted speed limit. Agents also observed the front seat passenger appear to turn around inside the car and look toward the

3

back of the car several times. At this time, agents could now also see arms, and hands in the back of the vehicle moving around.

11. Agents activated their emergency lights and sirens and pulled the silver SUV over to conduct an immigration inspection on the occupants inside. Agents identified themselves as a United States Border Patrol Agents and began questioning the occupants in the silver SUV. The driver (later identified as Fatos DERVISHAJ) became very nervous and quickly told agents they had gotten lost and that they were just coming back from Walmart. Agents asked the front seat passenger if that was true, the front passenger (later identified as Ilirjana DERVISHAJ) looked completely lost and gave no reply. Upon further questioning, the driver stated that Ilirjana DERVISHAJ did not speak English and that she was not from here. Agents observed that Ilirjana DERVISHAJ's clothing had fresh snow all over her legs, Fatos DERVISHAJ stated that they pulled over along the side of the road for Ilirjana DERVISHAJ to use the restroom.

12. After several attempts to obtain truthful statements, Fatos DERVISHAJ stated that the passengers were family from Kosovo, and they needed some help, so he was giving them a ride.

13. After a brief field interview, it was determined that all three passengers (later identified as: Ilirjana DERVISHAJ; A.D.; and A.D.) in the silver SUV had crossed the United States/Canada border without inspection and did not possess any legal documentation to be in or remain within the United States legally.

14. All four individuals were detained and transported back to the Burke Border Patrol Station for record checks, interviews and processing.

15. At the station, biographical information and fingerprints were entered into Department of Homeland Security databases for all four subjects. Record checks revealed that

Fatos DERVISHAJ is a citizen of the United States. Record checks revealed that all three of the additional passengers in the silver SUV were citizens of Kosovo with no documentation to be in, passthrough or remain in the United States legally.

16. At the Burke Border Patrol Station, Fatos DERVISHAJ, Ilirjana DERVISHAJ and their personal belongings were searched for weapons and other illicit contraband. During this search, cellphones were discovered on the persons of Fatos and Ilirjana DERVISHAJ as described below:

   a. One Apple iPhone from Fatos DERVISHAJ.

   b. One Apple iPhone in black case from Ilirjana DERVISHAJ.

17. Based on my training and experience, I know that individuals interested in unlawfully entering the United States, particularly by sneaking across an international boundary between the United States and Canada, or the United States and Mexico, will often utilize the services of a smuggler to assist their unlawful entry into the United States. These same individuals interested in unlawfully entering the United States, and who use the assistance of a smuggler, frequently engage in telephonic, text message, messaging application, etc. communications with the smuggler in order to receive information about when to cross the international border, where to cross the international border, how to cross the international border (e.g., vehicle, boat, snowmobile, on foot, etc.), where to go once they have successfully entered the United States, with whom they can expect to meet inside of the U.S., and how that person inside of the U.S. will aid them in getting to a desired destination within the United States, usually by unlawfully transporting them in a vehicle.

18. Based on my training and experience, I also know that smugglers of aliens into the United States often recruit individuals within the United States to meet the aliens near the border (once the aliens have unlawfully entered the United States), and then transport the

5

aliens to certain destinations within the United States. The recruited individuals often receive a fee from the smuggler, or the alien, for agreeing to pick up the aliens at certain dates, times, and places near the border, and then transporting those aliens (usually in a vehicle) to certain locations further inside of the United States. It is common for both the smugglers, and the aliens being smuggled, to communicate over cellphones (e.g. voice, text, messaging application, etc.) with the individuals who have been recruited to meet the aliens near the border and then transport the aliens to certain destinations within the United States. The communications are necessary to ensure that the alien, once first unlawfully inside of the United States, is promptly transported to another location within the United States to avoid detection or contact with law enforcement agents.

19. Individuals interested in unlawfully entering the United States will also use their cellphones to communicate with other similarly situated individuals, that is, individuals who are part of a group being smuggled by the smuggler at one time. Thus, it is common for the cellphones of aliens apprehended near the border to contain records of communications with one another, with the smuggler, and with the individual who has been recruited inside of the United States to transport the aliens once they have first unlawfully entered the United States.

**TECHNICAL TERMS**

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be

assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of

7

electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA

users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

21. Based on my training, experience, and research, I know that cellular phones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence

described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Attested to by the Affiant:

*D. Matthews*  3/3/2025 - 3:30 PM
Dustin Matthews
Border Patrol Agent
United States Border Patrol

I, the Honorable Gary L. Favro United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on March 4, 2025 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

*Gary L. Favro*
Hon. Gary L. Favro
United States Magistrate Judge

11

## ATTACHMENT A

### Property to be Searched

The property to be searched is:

- One Apple iPhone;
- One Apple iPhone in black case;

all currently in the custody of Border Patrol located at 4525 US Highway 11, Malone, New York 12953 and seized on February 20, 2025. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## Particular Things to be Seized

1. All records, in whatever form, on the Devices described in Attachment A that relate to violations of Title 8 U.S.C. § 1324 (Bringing in and harboring certain aliens and conspiracy to do the same) and 8 U.S.C. § 1325 (Improper entry by alien), (the "Subject Offenses"), and involve, Fatos DERVISHAJ, and Ilirjana DERVISHAJ and other as-yet unidentified co-conspirators, including:

   a. Listings of incoming and outgoing calls with corresponding date/time of calls;
   b. Stored telephone and address directories;
   c. Direct connect and identification numbers;
   d. Pictures and videos;
   e. All audio recordings;
   f. All voice mail recordings;
   g. All location and GPS data;
   h. All instant messaging and related stored communications;
   i. All e-mail and related stored communications;
   j. All SMS messages and related stored communications;
   k. Any other notations or electronic storage of any kind; and
   l. Financial records, ledgers, bank records, money transfers or books of account of Fatos DERVISHAJ and Ilirjana DERVISHAJ or others relating to the Subject Offenses.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

13

a. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.